[Crim. No. 24299. Aug. 7, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE D. PEARSON, Defendant and Appellant.

**COUNSEL**

Brian DeAmicis, under appointment by the Supreme Court, for Defendant and Appellant.

Frank O. Bell, Jr., State Public Defender, Gabriel C. Vivas and Michael Pescetta, Deputy State Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe, Eddie T. Keller and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—This case raises the questions (1) whether a defendant may be convicted of both statutory sodomy and lewd conduct for the commission of a single act of sodomy and (2) whether the use of both such convictions

to enhance future sentences would constitute impermissible double punishment.

Defendant committed an act of sodomy on each of two children. For each act he was convicted of two offenses: sodomy with a child under 14 (Pen. Code, § 286, subd. (c))[1] and lewd conduct (§ 288, subd. (a)). The court imposed sentence for the lewd conduct convictions but stayed sentence on the sodomy convictions so that defendant would not be punished twice for the same act. (§ 654.) As will appear, we conclude that the judgment should be affirmed.

I

■ Defendant contends the court erred in convicting him of two distinct offenses—statutory sodomy and lewd conduct—for each act of sodomy he committed. His position is that we must reverse one of the two convictions associated with each act.

Section 954 sets forth the general rule that defendants may be charged with and convicted of multiple offenses based on a single act or an indivisible course of conduct. It provides in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or *different statements of the same offense* . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, . . ." (Italics added.)

It is undisputed that defendant was properly *charged* with statutory sodomy and lewd conduct for each act; such charges clearly constitute "different statements of the same offense" and thus are authorized under section 954. It also appears the court was authorized to *convict* defendant of both offenses for each act; the statute clearly provides that the defendant may be convicted of "any number of the offenses charged." Moreover, this court has often affirmed multiple convictions for a single act or indivisible course of conduct. (See, e.g., *People* v. *Miller* (1977) 18 Cal.3d 873, 884-885 [135 Cal.Rptr. 654, 558 P.2d 552]; *People* v. *Beamon* (1973) 8 Cal.3d 625, 639-640 [105 Cal.Rptr. 681, 504 P.2d 905].) Nonetheless, defendant claims that the court was not authorized to convict him of statutory sodomy and lewd conduct for the same act.

*1. Multiple Convictions for Necessarily Included Offenses*

■ For two alternative reasons, defendant maintains that multiple conviction is improper in this case. The first is in two steps: he contends (1)

---

[1]Unless otherwise indicated, all statutory references hereafter are to the Penal Code.

that a defendant may not be convicted of both a greater and lesser included offense, and (2) that statutory sodomy (§ 286, subd. (c)) necessarily includes the lesser offense of lewd conduct (§ 288, subd. (a)). Thus defendant claims his convictions of lewd conduct must be reversed.

The first step in defendant's argument is apparently correct. Although the reason for the rule is unclear, this court has long held that multiple convictions may *not* be based on necessarily included offenses. (See, e.g., *People* v. *Moran* (1970) 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763] ["If the evidence supports the verdict as to a greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed"]; *People* v. *Bauer* (1969) 1 Cal.3d 368, 375 [82 Cal.Rptr. 357, 461 P.2d 637] ["double conviction" is prohibited "where one offense is necessarily included in another"]; *People* v. *Smith* (1950) 36 Cal.2d 444, 448 [224 P.2d 719]; *People* v. *Greer* (1947) 30 Cal.2d 589, 604 [184 P.2d 512].) We recently affirmed this policy in *People* v. *Cole* (1982) 31 Cal.3d 568 [183 Cal.Rptr. 350, 645 P.2d 1182], in which the defendant was convicted of robbery and grand theft for the same act. We held the grand theft conviction must be reversed "because it is a lesser necessarily included offense of the crime of robbery." (*Id.* at p. 582.)

Assuming arguendo that defendant correctly states the rule prohibiting multiple convictions based on necessarily included offenses, his contention must still fail because its second step is unsupported. "The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." (*People* v. *Greer, supra,* 30 Cal.2d at p. 596; *In re Hess* (1955) 45 Cal.2d 171, 174 [288 P.2d 5]; *People* v. *West* (1970) 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409]; *In re Robert G.* (1982) 31 Cal.3d 437, 441 [91 Cal.Rptr. 385, 477 P.2d 409].) Although the issue is not free of doubt, we believe that under this test the offense of lewd conduct is not a lesser included offense of statutory sodomy.

The lewd conduct statute (§ 288, subd. (a)) provides in relevant part: "Any person who shall willfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years, *with the intent* of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony . . . ." (Italics added.) This provision can be violated only when a lewd act is committed with the required specific intent. In contrast, statutory sodomy is a general intent crime: the sodomy provision (§ 286, subd. (c)) makes punishable "[a]ny person who participates in an act of sodomy with another person who is under 14 years of age and more than 10 years younger than he or she," and section 286, subdivision

(a), defines "sodomy" as "sexual conduct consisting of contact between the penis of one person and the anus of another person."

Defendant argues that "it is inconceivable that a person can engage in sodomy on a child without at the same time committing a lewd and lascivious act on that child." Although this may be accurate in a moral sense, it is not true that every such act is committed with the specific intent required in section 288. For example, an act of sodomy can be committed for wholly sadistic purposes, or by an individual who lacks the capacity to form the required specific intent.

Defendant relies on *People* v. *Memro* (1985) 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446], in which we observed that: "It is true that appellant confessed to committing an act of sodomy on Carl Jr.'s body—an act which constitutes a violation of section 286 [sodomy] as well as section 288 [lewd conduct]." (*Id.* at p. 697, fn. 47.) In *Memro,* however, the defendant admitted that the offenses he planned to inflict on his victim were "to be done to achieve sexual satisfaction." (*Id.* at p. 697.) Thus, we knew on the facts of the case that the defendant had the intent required under section 288, and our comment cannot be interpreted to hold that all acts of sodomy necessarily constitute lewd conduct. Other cases cited by defendant also fail to consider the precise question before us—whether sodomy must in all cases be committed "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires" of the perpetrator or his victim.[2]

### 2. *Multiple Convictions for Specifically Included Offenses*

Defendant's second contention is in some ways the inverse of the first. If we refuse to set aside his lewd conduct convictions on the theory that the offense of lewd conduct is "necessarily included" in statutory sodomy,

---

[2]Section 1159 provides that a defendant may be found guilty of "any offense, the commission of which is necessarily included in that with which he is charged . . . ." We are aware that the meaning of the phrase "necessarily included" offense as used in section 1159 has been expanded beyond the definition set forth for such offenses in *Greer*. The expanded definition has been described as follows: "Where a defendant is charged with one or more offenses and from the language of the pleading the commission of one charged offense necessarily includes the commission of another, the latter is a 'necessarily included offense,' even though its elements are not within the legal elements of the greater offense as defined by statute." (*People* v. *Nicholson* (1979) 98 Cal.App.3d 617, 623 [159 Cal.Rptr. 766], citing *People* v. *Marshall* (1957) 48 Cal.2d 394, 405 [309 P.2d 456].) Nonetheless, while an expanded definition of necessarily included offenses may be appropriate in the context of section 1159, there appears little reason to enlarge the meaning of the same phrase as it is used in other situations. We need not answer the question here, however, because the information did not include sufficient language to make the convictions for lewd conduct necessarily included offenses under even this expanded test.

he maintains we must reverse his sodomy convictions because sodomy is "specifically included" in the offense of lewd conduct. He relies primarily on language in *People* v. *Greer, supra,* 30 Cal.2d at pages 601-604.

In *Greer* this court first considered the defendant's claim of double jeopardy. He had previously been convicted of contributing to the delinquency of a minor (former Welf. & Inst. Code, § 702) in a separate trial. (*Id.* at p. 595.) In the *Greer* case itself he was charged with statutory rape (former § 261, subd. (1)) and lewd conduct (former § 288), but he claimed the charges were based on the same act that served as the basis for his conviction in the earlier trial. (*Ibid.*) The trial court, however, refused his offer to prove those facts. The defendant argued that the refusal to allow him to offer evidence of double jeopardy was reversible error, and this court agreed (*id.* at p. 601).

Realizing that on remand the defendant might not be able to prove that his rape and lewd conduct charges were based on the same act as his earlier conviction, and thus that he might not obtain a dismissal of those charges, the court addressed a final issue: whether the defendant could be convicted of rape and lewd conduct if both charges were based on the same act. The defendant claimed he could not be so convicted, and we concluded he was correct. (*Id.* at pp. 601-604.) While recognizing that statutory rape and lewd conduct were not necessarily included offenses, this court apparently believed they were analogous because the wording of the lewd conduct statute (former § 288) *specifically* included the offense of statutory rape as a type of lewd conduct; this statute prohibited "any lewd or lascivious act *including any of the acts constituting other crimes provided for in part one of [the Penal] code . . . .*" (Italics added.) Because statutory rape was provided for in part one of the Penal Code, and thus was specifically included in the offense of lewd conduct, the court decided that it was enough like a necessarily included offense to be treated similarly. (*Id.* at p. 604.) Thus, *Greer* created the rule that "specifically included offenses," like "necessarily included offenses," could not give rise to multiple convictions.

*Greer* does lend some comfort to this defendant. The present lewd conduct statute (§ 288) is identical in relevant part to the statute considered in *Greer.* Moreover, today's statutory sodomy provision is "specifically included" in section 288 in the same manner that the statutory rape provision was included in former section 288. Further, the Court of Appeal in *People* v. *Osuna* (1984) 161 Cal.App.3d 429 [207 Cal.Rptr. 641], relied on *Greer* to reverse a conviction of forcible rape (§ 261, subd. (2)) based on the same act as another conviction of lewd conduct (§ 288, subd. (b)).

Upon reflection, however, we do not find that *Greer*'s rule regarding "specifically included" offenses is controlling. To begin with, strict ap-

plication of the rule conflicts with the plain language of section 954, which states that "the defendant may be convicted of any number of the offenses charged," and which does not contemplate exceptions for "specifically included" offenses. Additionally, for our purposes the analysis of *Greer* is not precisely relevant. At the beginning of its discussion the court posed the question whether defendants could be *convicted* of lewd conduct and rape based on the same act. (*People* v. *Greer, supra,* 30 Cal.2d at p. 601.) During the discussion, however, it used the terms "conviction" and "punishment" interchangeably, suggesting that the court may have actually been addressing the issue of whether multiple punishments, not multiple convictions, could arise from charges of statutory rape and lewd conduct based on the same act. In fact, the court even rephrased the question in terms of punishment, declaring: "This court has not considered until now . . . whether a defendant may be *punished* for the same act under both section 288 and another section of part one of the Penal Code." (*Id.* at p. 603, italics added.) Finally, the discussion of specifically included offenses was essentially dictum because the court had already determined that the judgment would be reversed on other grounds before it reached this issue.

We therefore do not feel compelled to reverse defendant's convictions of statutory sodomy on the ground that sodomy is a "specifically included offense" within lewd conduct.

## II

■ Having determined that defendant was properly convicted of both statutory sodomy and lewd conduct for each of his two acts, we consider his request that we prohibit the use of more than one conviction based on each of his criminal acts for the purpose of enhancing any subsequent sentences he may receive. Although it appears to be premature—i.e., it assumes the possibility that defendant may commit future crimes—we reach the issue because it was fully briefed and argued.

Defendant was convicted of two counts of statutory sodomy (§ 286, subd. (c)) and two counts of lewd conduct (§ 288, subd. (a)), a total of four convictions. Although these convictions are based on only two acts, the wording of certain recently enacted enhancement statutes suggests that defendant could be subjected to *four* sentence enhancements of five years each because of his prior commission of these *two* criminal acts. (See, e.g., § 667, subd. (a); § 667.51; § 667.6.) Section 667.51, for example, mandates a five-year enhancement for each prior *conviction* of various offenses, including sections 286 and 288. Defendant contends the possibility that he may in the future be subjected to multiple enhancements based on all his present convictions, i.e., resulting in *two* five-year enhancements for each

prior criminal act instead of one, is unfair and would constitute multiple punishment in violation of section 654. To prevent him from having to live under the threat of such multiple enhancements he asks that we prohibit them now.

Section 654 provides in relevant part: "An act or omission which is made punishable in different ways by different provisions of [the Penal] code may be punished under either of such provisions, *but in no case can it be punished under more than one*; . . ." (Italics added.) This section has been interpreted to apply not only to individual criminal acts, but also to courses of conduct that are motivated by a single intent or objective. (*People* v. *Beamon, supra,* 8 Cal.3d 625, 636-639; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) Therefore, when multiple convictions are based on a single act, as in this case, or an indivisible course of conduct, the use of such convictions must not result in the defendant being "punished under more than one" Penal Code provision.

This court has long struggled with the problem of permitting multiple convictions while protecting the defendant from multiple punishment. Some of our earlier decisions held that the imposition of concurrent sentences sufficiently protected the defendant from multiple punishment because he would be serving each of his sentences simultaneously. (See, e.g., *People* v. *Kynette* (1940) 15 Cal.2d 731, 761-762 [104 P.2d 794].) In other cases, however, we refused to affirm multiple convictions because of the possibility that such convictions would disadvantage the defendant when the Adult Authority fixed the date he would ultimately be released from prison. (See, e.g., *People* v. *Brown* (1958) 49 Cal.2d 577, 593 [320 P.2d 5]; *People* v. *Logan, supra,* 41 Cal.2d 279, 290-291 [260 P.2d 20]; cases cited in *People* v. *Smith, supra,* 36 Cal.2d 444, 448.) In *Neal* v. *State of California, supra,* 55 Cal.2d 11, we went so far as to indicate that multiple convictions were invalid per se. (*Id.* at p. 19 ["If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed."].)

Our later cases, however, reaffirmed that section 654 bars multiple punishment, not multiple conviction. (*People* v. *Tideman* (1962) 57 Cal.2d 574, 586-587; *People* v. *McFarland* (1962) 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449].) In *McFarland* we explained: "With respect to the procedure to be followed on appeal where double punishment has been erroneously imposed, it should be stressed that section 654 proscribes double punishment, not double conviction; conduct giving rise to more than one offense within the meaning of the statute may result in initial conviction of both crimes, only one of which, the more serious offense, may be punished. [Citation.] The appropriate procedure, therefore, is to eliminate the effect

of the judgment as to the lesser offense insofar as the penalty alone is concerned." (*Ibid.*)

In *People* v. *Niles* (1964) 227 Cal.App.2d 749, 756 [39 Cal.Rptr. 11], the Court of Appeal determined that the proper method of eliminating the punitive consequences of multiple convictions was to stay execution of sentence for all but one conviction arising out of each act or indivisible course of conduct. This procedure was developed to avoid the potentially unfair consequences to the state of refusing to allow multiple convictions: "if [a trial court] dismisses the count carrying the lesser penalty, and the conviction on the remaining count should be reversed on appeal, the defendant would stand with no conviction at all." (*Ibid.*)

Soon after *Niles,* this court decided *In re Wright* (1967) 65 Cal.2d 650 [56 Cal.Rptr. 110, 422 P.2d 998], in which we approved of the procedure the *Niles* court had developed. In *Wright* we reaffirmed the rule that section 654 does not prohibit multiple convictions, but also declared that it *does* bar concurrent sentences for such convictions. We reasoned that concurrent sentences still amounted to punishment under more than one provision, prohibited under section 654, and could prejudice the defendant in various ways: "Under the habitual criminal statute [citation] defendant would be prejudiced by erroneous concurrent sentences for an offense subject to a lesser penalty but available to support a determination of habitual criminality . . . and an offense subject to a greater penalty but not listed in the habitual criminal statute . . . .

"Erroneous concurrent sentences for petty theft, with a maximum term of six months in jail [citation], and issuing a check not exceeding $100 without sufficient funds, with a maximum term of one year in jail [citation], would be detrimental to a defendant who suffered a *subsequent* conviction because he would be subject to the increased minimum punishments provided by Penal Code section 666 for one who has been previously convicted of petty theft and 'served a term therefor in any penal institution.'" (*Id.* at p. 654, fn. 2, italics added.)

In *Wright* we therefore balanced the potential windfall to the defendant of reversing multiple convictions against the prejudice to him of allowing sentencing for such convictions. We then determined that the procedure of staying execution of sentence for multiple convictions instead of reversing such convictions "reasonably reconciles the policies involved in applying section 654 to protect the rights of both the state and the defendant," and follows logically from the section 654 prohibition against punishing the defendant under more than one provision based on a single criminal act. (*Id.* at pp. 655-656, fn. 4.)

██ In the case at bar the trial court used the procedure developed in *Niles* and *Wright*; it stayed execution of sentence on each of the sodomy counts, the stays to become permanent on completion of the sentence on the lewd conduct counts. The question remains whether defendant can be subjected to future enhancements based on all four of his convictions in this case. We conclude that he cannot. Any subsequent sentences imposed on defendant can be enhanced on the basis of the convictions for which he served a sentence; but convictions for which service of sentence was stayed may not be so used unless the Legislature explicitly declares that subsequent penal or administrative action may be based on such stayed convictions. Without such a declaration, it is clear that section 654 prohibits defendant from being disadvantaged in any way as a result of the stayed convictions.

Our conclusion is based first on *Wright* itself. In *Wright* we disapproved of the process of sentencing defendants to concurrent terms based on the same act precisely because of the danger that such defendants would be disadvantaged under recidivist provisions that were similar to the enhancement provisions discussed here. In approving the procedure used in *Niles,* we necessarily assumed the defendant would thereby be protected from such disadvantages.

There is also ample precedent from the Court of Appeal holding that section 654 prohibits the use of a conviction for any punitive purpose if the sentence on that conviction is stayed. In *People* v. *Avila* (1982) 138 Cal.App.3d 873 [188 Cal.Rptr. 754], for example, the defendant was convicted of several offenses arising out of an indivisible course of conduct. The trial court stayed execution of the sentences for all but the most serious offense, and committed the defendant to the California Youth Authority (CYA). (*Id.* at p. 875.) The CYA, however, declined to accept the defendant on the sole ground that his conviction of one of the stayed offenses made him ineligible for its program.[3] He was returned to the trial court, which set aside the CYA commitment and sentenced him to state prison. The Court of Appeal reversed this judgment and directed reinstatement of the commitment, explaining that "The practice of staying was accepted as compatible with the prohibition against multiple punishment because it was assumed no incremental punishment can flow from the stayed sentences. [Citation.] Section 654 therefore prohibits punishment for a stayed offense.

---

[3]Welfare and Institutions Code section 1731.5, provides that a person under 21 years of age who is convicted of a public offense is eligible for commitment to and treatment in the CYA unless, inter alia, he has been "sentenced to . . . imprisonment for life." One of the crimes the defendant had been convicted of was kidnapping for the purpose of robbery (§ 209, subd. (b)), which is punishable by life imprisonment. Although his sentence for violating section 209 was stayed, the CYA took the position that his conviction of that crime disqualified him for commitment.

If the stayed sentence for the kidnaping for the purpose of robbery is construed to preclude a CYA commitment, the effect is the forbidden punishment." (*Id.* at p. 879.) Similarly, if defendant here were subjected to future sentence enhancements based on his stayed convictions, this would also constitute the type of "incremental punishment" that section 654 forbids.

In *People* v. *Duarte* (1984) 161 Cal.App.3d 438 [207 Cal.Rptr. 615], the court faced a situation comparable to the instant matter. The defendant was convicted, inter alia, of violating subdivisions (a) and (b) of Vehicle Code section 23153 (driving under the influence). Both convictions arose from a single act of "drunk driving." The Court of Appeal affirmed the convictions, but feared that although the defendant's sentence on the second conviction was stayed in accordance with well-established section 654 practice, the risk remained that both convictions might be used to enhance future punishment. The court reasoned: "Having suffered two convictions and one punishment, defendant remains exposed to the use of the two convictions to enhance future punishment. The Vehicle Code contains an increasing number of sections which penalize recidivism. These sections ordinarily refer to prior 'convictions' without qualifying them to exclude multiple convictions arising from a single driving occasion. By only staying *punishment* on one of the two convictions, another court at another time may have to determine whether the defendant has one or two 'priors.'" (*Id.* at p. 447, italics in original.) To avoid such multiple enhancement based on a single act of illegal driving, which the court correctly stated would be a violation of section 654, it modified the judgment by ordering that "the *use* of the [second] conviction . . . as a prior conviction for penal and administrative purposes, be stayed . . . ." (*Id.* at p. 448, italics in original.) Again, in *People* v. *Conner* (1986) 176 Cal.App.3d 716 [222 Cal.Rptr. 311], the court was also faced with multiple convictions arising out of a single act of drunk driving; it followed *Duarte* and stayed the use of the lesser conviction for sentencing and administrative purposes. (*Id.* at p. 719.)

Finally, in *People* v. *Osuna, supra,* 161 Cal.App.3d 429, the Court of Appeal feared the defendant might later be subjected to multiple enhancements, and believed this danger was sufficient reason to reverse the lesser conviction even though such enhancement had not yet been ordered: "We realize this is merely a *potential* consequence which only comes into play if the individual is subjected to an application of the enhancement statutes. However, the possibility of an undue additional five-year sentence is serious enough to bar the erroneous conviction in the first place." (*Id.* at p. 436, italics in original.)

The foregoing precedents were properly concerned with the potential or actual application of enhancement statutes to stayed convictions. Although

it is true that "increased penalties for subsequent offenses are attributable to the defendant's status as a repeat offender and arise as an incident of the subsequent offense rather than constituting a penalty for the prior offense" (*In re Foss* (1974) 10 Cal.3d 910, 922 [112 Cal.Rptr. 649, 519 P.2d 1073]), a defendant's status as a repeat offender relates to the number of wrongful acts he committed, not to the number of his convictions. In keeping with our reason for using stays in multiple conviction situations, the defendant is penalized if he suffers enhancements based on stayed convictions. Thus to enhance a defendant's sentence because of a stayed conviction would constitute multiple punishment and is prohibited by section 654.[4]

■ We are not unmindful of section 1170.1, subdivision (i), which provides that for forcible sex offenses "the number of enhancements which may be imposed shall not be limited, regardless of whether such enhancements are pursuant to this or some other section of law." This provision does not apply here, however, because defendant was not convicted of *forcible* sex offenses. Moreover, even if this section applied, its language does not manifest a clear legislative intent to enhance sentences more than once for a single criminal act. (See *People* v. *Tassell* (1984) 36 Cal.3d 77, 89-92 [201 Cal.Rptr. 567, 679 P.2d 1].) ■ Similarly, we are aware of article I, section 28, subdivision (f), of the California Constitution, which provides: "Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding." The rule we announce here, however, does not "limit" enhancements for prior convictions; on the contrary, it allows such enhancements to the full extent that they are authorized by the Legislature. (See *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111].)

The judgment is affirmed.

Bird, C. J., Broussard, J., Reynoso, J., Grodin, J., and Panelli, J., concurred.

**LUCAS, J.**—I concur in the judgment. Defendant was properly convicted of both statutory sodomy (two counts) and lewd conduct (two counts) for the commission of sodomy on two young children. As the majority observes, the trial court stayed sentence on the sodomy convictions so that defendant would not be punished twice for the same act. (Pen. Code, § 654.)

---

[4]To avoid any misconception by trial judges in future cases involving multiple convictions that have been stayed, we recommend that the stayed convictions be formally dismissed on completion of the defendant's sentence and parole on the conviction for which he is to be punished.

But I would not issue defendant an advisory opinion on the concededly premature issue as to whether using all these convictions to enhance *future* sentences would constitute impermissible double punishment. That issue will not arise until defendant has committed, and suffered a conviction for, some future offense for which such an enhancement might be appropriate. What valid purpose is served by assuring defendant that, if he chooses to commit such an offense, his enhanced punishment will not be as severe as he might have feared?

I would simply affirm the judgment.

Respondent's petition for a rehearing was denied October 2, 1986. Lucas, J., was of the opinion that the petition should be granted.