Filed 1/29/15  P. v. Blaylock CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D065019 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE329029) |
| DAVID S. BLAYLOCK, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County,

Lantz Lewis, Judge.  Affirmed as modified.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General,

A. Natasha Cortina, Kristen Kinnaird Chenelia and Kelley A. Johnson, Deputy Attorneys

General, for Plaintiff and Respondent.


A jury convicted David S. Blaylock of sodomy with a child 10 years old or

younger, oral copulation with a child 10 years old or younger, seven counts of lewd acts

upon a child, employment of a minor to perform prohibited acts, and possession of matter depicting a person under the age of 18 in sexual conduct. He appeals, contending (1) there was insufficient evidence to support his conviction on one of the seven lewd acts upon a child counts, and (2) the trial court erred by issuing a 10-year protective order under Penal Code section 646.9. (Undesignated statutory references are to the Penal Code.) The Attorney General concedes and we agree that the trial court's order must be corrected to reflect an order prohibiting visitation under section 1202.05 rather than a protective order under section 646.9. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In approximately 2005 to 2008, K.C. and his mother, R.R., lived with Blaylock. K.C. was three to five years old at the time. R.R. and Blaylock shared a bedroom and K.C. had his own room.

In 2011, R.R. and K.C. were watching a television show about good touching versus bad touching when K.C. said, "'Bad touch. That happened to me.'" K.C. explained to R.R. that Blaylock used to come into his bedroom and touch his "man stuff," which was a term K.C. used to refer to his penis. K.C. also told R.R. that Blaylock used to take pictures of him. K.C. did not previously tell R.R. about what happened because he was afraid. R.R. called the sheriff's department.

In December 2011, K.C. met with Christina Shultz, a child forensic interviewer. K.C. told Shultz that on more than one occasion, Blaylock touched K.C.'s "man stuff" with his hand. K.C. reported that Blaylock would come into his room at night while R.R.

2

was asleep. Blaylock would reach into K.C.'s underwear and "jiggle" K.C.'s penis with his hand. K.C. pretended to be asleep.

K.C. sometimes slept in the bedroom that R.R. shared with Blaylock. K.C. stated that while he was in that room and his mother was in the shower or in another room, Blaylock would touch him. That happened many times.

K.C. reported to Shultz that Blaylock put his mouth on K.C.'s penis about five times. Blaylock took pictures of his mouth on K.C.'s penis and on one occasion licked K.C.'s butt. Blaylock put his penis in K.C.'s butt twice. K.C. described one instance when he was sleeping in R.R.'s bed and Blaylock pulled down K.C.'s pants and underwear and then put his penis on K.C.'s butt. Blaylock stopped when he heard R.R. getting out of the shower.

San Diego County Sheriff's Detective Christi Licudine searched Blaylock's house and seized several laptop computers. A forensic examiner located more than 100 images of child pornography on the computers. Police also found a blue and white blanket in the master bedroom of Blaylock's house, which Detective Licudine recognized as a blanket she had seen in the photographs downloaded from Blaylock's computer.

Blaylock's ex-wife, Casie Wright, testified that during the course of their marriage, she found child pornography multiple times on the computer she shared with Blaylock. When Wright confronted Blaylock, he admitted to looking at child pornography and agreed to see a counselor. After Blaylock revealed to the counselor that he viewed child pornography, Child Protective Services conducted an investigation. Blaylock admitted to

3

a Child Welfare Services worker that he viewed child pornography and would sometimes masturbate while he viewed Web sites that contained child pornography.

*Defense*

Blaylock testified on his own behalf and admitted to having an addiction to child pornography. However, he denied touching K.C. and denied that he was the man in the photographs that were seized from his computers.

Forensic psychologist Dr. Raymond Murphy evaluated Blaylock in 2013. Dr. Murphy could not identify any sexual deviance and determined that Blaylock was not a pedophile. However, Dr. Murphy was not aware that Blaylock admitted to his ex-wife that he was a pedophile and to a social worker that he was addicted to child pornography. Dr. Murphy stated if that information was correct, he would change his opinion as to whether Blaylock was a sexual deviant.

DISCUSSION

I. *Sufficiency of the Evidence*

The jury convicted Blaylock in count 1 of sodomy with a child 10 years or younger and in counts 7 and 8 of lewd acts upon a child. Count 7 was specified as "penis to buttocks - First Time" and count 8 was specified as "penis to buttocks - Last Time." The trial court sentenced Blaylock to a term of 25 years to life on count 1 and stayed the sentences on counts 7 and 8 pursuant to section 654. Blaylock contends there was insufficient evidence to support his conviction on count 8 because there was no way for a reasonable jury to assume that one of the two times K.C. reported Blaylock put his penis

4

on K.C.'s butt was not the same as the factual basis that supported Blaylock's sodomy conviction in count 1.

"When a defendant challenges the sufficiency of the evidence, '"[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.] We '"'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'"'" (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.)

Here, Blaylock ignores the well-settled rule that a defendant can be convicted of two separate offenses based on the same conduct. (*People v. Pearson* (1986) 42 Cal.3d 351, 359 (*Pearson*).) In *Pearson*, the Supreme Court determined that a defendant could be convicted of two separate offenses—statutory sodomy and lewd conduct—based on the same act of sodomy. Relying on section 954, which sets forth the general rule that defendants may be charged with and convicted of multiple offenses based on a single act or an indivisible course of conduct, the *Pearson* court concluded that the trial court was "authorized to convict defendant of both offenses for each act" because "the statute clearly provides that the defendant may be convicted of 'any number of the offenses charged.'" (*Pearson*, *supra*, at p. 354, italics omitted.) However, "'conduct giving rise to more than one offense within the meaning of the statute may result in initial conviction of

both crimes, only one of which, the more serious offense, may be punished. [Citation.] The appropriate procedure, therefore, is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned.' [Citation.]" (*Id*. at pp. 359-360.)

In this case, K.C. stated Blaylock put his penis in K.C.'s butt twice. During one of those instances, K.C. described a specific situation when he was sleeping in R.R.'s bed while R.R. was in the shower. Blaylock pulled down K.C.'s pajamas and then put his penis in K.C.'s butt. The evidence was sufficient to support Blaylock's sodomy conviction in count 1 and lewd conduct convictions in counts 7 and 8 as K.C. clearly stated Blaylock put his penis in K.C.'s butt two times. The overlapping factual bases for the sodomy charge and one lewd conduct charge does not warrant reversal of the lewd conduct conviction because a defendant may properly be convicted of both sodomy and lewd conduct based on the same act. (*Pearson*, *supra*, 42 Cal.3d at p. 354.) Additionally, we note that while Blaylock was convicted of multiple offenses based on the same conduct, the trial court properly stayed the sentence on count 8 so that Blaylock was not subjected to multiple punishments. (*Id.* at pp. 359-360.)

## II. *No Contact Order*

When the court orally pronounced Blaylock's sentence, it stated Blaylock was to have "no contact with the victim and the victim's family, and that order [wa]s entered pursuant to [section] 1202.05." The abstract of judgment correctly reflects the no visitation order under section 1202.05. However, a minute order from October 4, 2013, indicates that a no contact order pursuant to section 646.9, subdivision (k), was modified to add R.R. as a protected person. Additionally, the court issued a modified criminal

6

protective order under section 646.9, subdivision (k). Blaylock contends the court's minute order must be corrected to eliminate the reference to section 646.9, subdivision (k), and the protective order under that section should be stricken. The Attorney General concedes and we agree that the section 646.9, subdivision (k), protective order was unauthorized and the error should be corrected.

The oral pronouncement of judgment controls over any discrepancy with the minutes or the abstract of judgment. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070.) A discrepancy between the judgment as orally pronounced by the court and as entered in the minutes is presumably the result of a clerical error. (*People v. Hong* (1998) 64 Cal.App.4th 1071, 1075.)

Here, the trial court orally pronounced a no visitation order under section 1202.05, which requires the sentencing court to prohibit visitation between a defendant convicted of certain sex offenses and his "child victim." Section 646.9, subdivision (k), on the other hand, provides that the sentencing court should consider issuing a restraining order against a defendant convicted of stalking. Blaylock was not charged with or convicted of stalking. Thus, a protective order under section 646.9, subdivision (k), is unauthorized. It is clear from the record that the court intended to issue a no visitation order under section 1202.05. The record must be corrected to reflect the proper order.

### DISPOSITION

The trial court's October 4, 2013, minute order shall be corrected to reflect a no visitation order under section 1202.05 rather than a no contact order under section 646.9, subdivision (k). Further, the modified criminal protective order entered pursuant to

7

section 646.9 on October 4, 2013, is stricken.  In all other respects, the judgment is affirmed.

McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

8